Adam, please call the first case in the morning. 215-0275, Ramona Davis v. Winnebago. Counsel, you may proceed. Good morning, Your Honor. Counsel? My name is Jason Esmond. I'm here on behalf of the plaintiff, Ramona Davis. I would request five minutes for rebuttal. You will have. Thank you. I'm here seeking reversal of the decision of the commission which denied the plaintiff's claim by finding that her frequent keyboarding was insufficient to play a causative role in the development of Bilingual Couple Tongue Syndrome. The commission also classified the plaintiff's keyboarding as self-paced and intermittent, which, in our opinion, was unsupported by the record. The arbitrator in this decision found in plaintiff's favor, finding that her description of her keyboarding was done in a frequent manner. Well, we know the procedural history in it, so go right to your argument as to why you think the commission's decision was against the manifest way. I think it's against the manifest way of the evidence because there is the only credible medical opinion in this case is that of the treating physician, Dr. Antonacci. Dr. Antonacci noted that he did not believe that she did constant typing. He noted that her typing was intermittent. She did not do it all day every day. But the amount of typing she did, which has been classified as frequent, which the arbitrator of the commission, you know. Well, but isn't the crux of this case, yes, that says activities of this nature could lead to this condition of ill-being? Correct. Okay. And they did not apparently credit or accept the opposing medical opinion, is that correct? That is right, Dr. Pomerantz's opinion. But isn't the gist of this decision of the commission is that, the metric to establish this compensability rests not in disagreement with your medical expert. You just didn't put together in their decision the facts sufficient to make the case for your client that what she's experiencing now is causally related to the work activities. I think that's a correct description of the issue. What's wrong with that? Well, I think what's wrong with that is that the commission, the arbitrator, everyone found that her description of how much keyboards she did was correct. There's no indication. And what was that? Was there some percentage that was given as to how much, how many hours a day of the work day she spent doing repetitive keyboarding? That's part of the issue, is that she had a difficult time describing a normal day. Because as she describes, her days were varied. Some days she would have to go to court. Some days she's in the office all day. In some of these cases, the person is typing essentially all day. All day. She's a victim witness coordinator, and if you know anything about the state attorney's office in that position, they're in court, they're out of court, they're doing a variety of tasks besides typing, correct? Correct. What her description was that about half of her day was at a desk. And the job description that the defendant provided noted 40 percent. 40 to 50 percent, I mean, relatively close. But from her description, about half of her day was at her desk. So where did the commission go wrong? Because the case law says, I believe, actually, these cases have to be decided on a case-by-case basis because there is no magic objective formula. You can say, okay, somebody spends 60 percent, they will recover, somebody less doesn't. So why is the commission's decision wrong? It's wrong because she described frequent keyboarding. There's also no decision that says frequent keyboarding is not sufficient. The commission knows without any citation that she needs frequent, which would indicate that they're all of a sudden assessing a certain percentage of the day that must be spent on this activity. Like I said, the opinion of Dr. Antonacci, who had a decent understanding of what she did, noting that it wasn't constant typing, noted his medical opinion that the described amount of keyboarding would be sufficient to be a contributory cause to carpal tunnel syndrome. But the commission is not bound to any medical opinion or bound to infer even from the absence of a medical opinion in making its decision, is it? They're not specifically bound. But I think what we're looking at is totality of the evidence, not just because the doctor says that this is related, do they have to accept it's related. But I think when you're looking at the evidence as a whole, they consistently note that her testimony regarding what she did was credible. The arbitrator who heard her testimony found that she did frequent typing, found that it was sufficient, or there was an amount that was consistent with the testimony of Dr. Antonacci. What we seem to have in this literature, and were there other keyboarding issues, there seems to be some body of medical literature, although the commission in this case didn't go with it, that there is no keyboarding. It's not a significant cause or even a cause of this condition. Now, of course, she had a medical opinion that said otherwise, and there's discussion as to the weight of the literature. But I'm curious, there are other activities involving the use of the hands, were there not other than keyboarding? There were. I mean, besides keyboarding, she's answering phones, she's using a mouse, she's writing. But from her testimony, most of what she's doing that is causing her symptoms, causing her to be symptomatic, was the keyboarding. Okay. So you're saying there's no evidence in this record that retrieving files, putting files back on a daily basis at the number of files that were apparently in the caseload on a daily basis, that that had any deleterious effect on her? It's all part of it. I mean, she's doing all these things. It's not that she can't pull her files without using her hands to do it. But by her description, she describes days where she's pulling a significant number of files. But from her description, most of what she's doing is keyboarding. I'm sure it's all contributory. The doctor's opinion is that mainly it's the keyboarding that was the main contributory factor here. She testified she spent 50% of her work time at her desk, and that 50% of the time she spent in her office was spent using her computer. Is that correct? That's correct. So the commission could have reasonably inferred that the claimant, when you think about it, spent less than half of each day, and perhaps as little as 25% of each day, keyboarding. A quarter of the day she was keyboarding. They could have inferred that they did not. The commission indicated they agreed that she spent a frequent amount of time keyboarding, but then stated that frequent keyboarding was not sufficient. They had to base it on something, and I think the math would suggest that they're saying 25% of the time is not frequent enough. Well, and if it was 20%, 25%. That was her description of some of her time was 25%. She also testified that some days she was in the office, or at the desk doing keyboarding most of the day for almost the entire day. But as my learned colleague Justice Hoffman likes to opine, in the manifest way that the evidence stands, there isn't necessarily a right or a wrong answer. You look at this, you've got 25%, and the commission's view that it's not sufficiently repetitive to award the claimant. How do we substitute our judgment for that of the commission and say that it is? Based on what? 25% is enough? Is that what we say? We announce a rule that says that? I probably wouldn't announce a rule that says that. I probably have a lot more cases. I have a feeling you probably won't announce a rule saying that. I would understand that.  She did have trouble, like I said, describing the exact amount of time that she was doing this job. Her testimony was that most of her time was at her desk, but when she's at her desk, she is using her hands. So I think when you're looking at 50% of her day, she's testified to 20 hours a week using her hands in what she describes as a fast-paced environment. Now, they also note that she's doing this at her own self-paced, which is contradictory to her testimony and to the job statement that's provided, noting she's got to work at a rapid pace. So at least half of her day when she's at her desk, she's working at a rapid pace using her hands throughout the day, causing her to become symptomatic. And for all those reasons, you believe she should recover? What's that? For all those reasons, you believe she should recover, right? That's right. Well, thank you. Thank you, Counsel. Counsel, you may reply or respond. Thank you, Your Honor. I'm going to please the Court. Carol Hartline on behalf of the State's Attorney's Office. I would ask this Court to affirm the Commission's decision in its entirety. I believe it's clear that the decision is not against the manifest weight of the evidence. The Commission's decision articulates specifically how they weighed the evidence. They discussed their findings of fact in coming to a unanimous decision denying benefits. It's clear from the record that her job duties varied, and the Commission indicated in reviewing her testimony it was difficult for her to articulate a clear picture of what her day was like on a day-to-day basis because it varied so much. Well, no real dispute that she did a substantial amount or significant amount, if you will, of keyboarding, right? I mean, the State's Attorney's Office isn't going to say she wasn't doing any keyboarding, obviously, right? I don't think it was ever a position that she did not do keyboarding. However, if you look at it specifically, the record is inundated with documents that they produced, and they went through them, 8A through 8O. And if you look at those documents and what they actually are and what she articulates that she did, the typing that she did do was mostly given specifically, she puts in Exhibit A, which is a detention list. It shows the number of clients or victims that she might have that day for court. That detentions list is not something she typed. I think that's probably a reason why the Commission had a problem with the case. 8B is a detention petition. She testified she got this. She reviewed it. But she's not the one that typed that document. A secretary typed that and gave it to her. So that reduces further the amount of time she's spending on keyboarding. Who's Dr. Antonacci? Her treating physician. And what did he opine? Did he give a causal connection? He did. He opined that his opinion was that her typing activities would have caused the bilateral carpal tunnel syndrome. Okay. So he, your opponent, is going to ask the question, well, how does anyone ever recover on a repetitive trauma? There is no magical formula. There is no percentage. The doctor says it caused the problem. So how would the claimant ever recover? Well, they can, but there's not sufficient facts in this case. The problem that the Commission had with Dr. Antonacci's opinion, and they articulated, is that in his opinion that he relied on the fact that he stated that he believed that part of coming to his conclusion that it's cost-related is that she cut back to 10 hours of typing per week. And, therefore, her symptoms got better. And that is the basis of his opinion. However, there was never any testimony at the time of trial to those facts, which is one of the reasons why the Commission did not adopt that opinion of Dr. Antonacci. They did not adopt our opinion. That was curious, too. Dr. Pomerantz, they didn't feel that he was credible. However, it's not our burden to disprove her case. The Commission is saying we are not adopting Dr. Antonacci's opinion because it's fatally flawed. In our opinion, there's problems with it, so we're not going to adopt it. But we're not going to adopt the respondent's opinion, either. So what are we left with? Her testimony regarding the facts of what she did and if it's repetitive enough. And that's a question of fact. And they point out she never testifies to repetitive gripping, awkward positioning, and asked several times about what she did in estimated times. One time she testified she spends approximately 50% of her time at her desk, and then I believe, Your Honor, you alluded to, then 25% of that was spent typing. However, other testimony shows a whole week she would spend in trial if it was a murder trial. Some days she would spend most of the time with victims on the phone or in meetings where she didn't take notes. So factually, her job varied so much, she couldn't even tell us exactly how much time she would type. So the Commission's decision cannot be against the manifest way, is what you're saying? Yes. And so we would ask that it be affirmed. There's evidence of her receiving relief after she limited her keyboard use to 10 hours per week, according to the Commission, came directly out of your expert's report. Yes. Is that what she told you? So Dr. Antonucci couldn't rely on that? I think he couldn't rely on it. However, how much weight do you give to that information when she never supports that at the time of trial? At the time of trial, she never testified to those facts. Whether or not it was true, what she said to Dr. Pomerantz, when she saw him years after. Is there any evidence in the record that it's untrue? Pardon me? Is there any evidence in the record that it's untrue? Her own testimony, because if she actually reduced it, because I believe she testified that she continued to perform the same job use up until the time that she had the surgery. So she never testified she got any relief after she limited keyboard use? She testified contrary to that? I can specifically tell you I do not believe in any of the records that she said she limited her keyboarding to 10 hours per week.  That was, okay, that relief that she pulled back from keyboarding? That was in your doctor's report, right? She indicated, according to Dr. Pomerantz's report, that she told him she limited her keyboarding to 10 hours per week. However, Dr. Antonucci testified that the evidence was that he never put her on any restriction. So she was working actually full duty up to the time that she had surgery. And what can we infer from her saying that? She also testified that she had problems at home with her hands. So she's having problems where she indicates that she primarily believes it's work-related. However, her testimony with regards to her job duties varying so much and having symptoms at home, I believe that the commission decision is not against the manifest way of the evidence. Thank you, Counsel. Counsel, you may reply. Very briefly, in regard to the questions about the reducing her hours, her keyboarding to 10 hours a week, I think there is an inference that can be drawn from that. She knows throughout her testimony she's doing various activities. I think the inference regarding improvement in her symptoms with keyboarding for only 10 hours a week can be made that on the weeks that she's not at her desk more than normal weeks, the days that she's maybe in court more of the time, that she was having improvement with those weeks where she was doing less keyboarding. Just because the commission seems to throw that out because they threw out Dr. Pomerantz's opinion. Just because Dr. Pomerantz's ultimate opinion regarding causation is not accepted doesn't mean the statements that were made to him in his report is not a piece of evidence. And so she's describing to him improvement on weeks that she's only doing 10 hours a week. Which would have been a permissible inference that probably would have been reported on review, and that's the problem with some of these cases at times, that ultimately it would be a permissible inference. So as a matter of law, it's there. It would not be irreversible. But who determines the quantum of evidence necessary for the claimant to recover? At this time, you lucky gentlemen get to do that. At this time, you lucky gentlemen get to do that. Okay. Thank you. Thank you, counsel, both for your arguments in this matter. This morning it will be taken under advisement that this position shall issue. Madame.